IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, ex rel. ) <br> JOHN DOAK, INSURANCE ) <br> COMMISSIONER, AS RECEIVER ) <br> FOR PARK AVENUE PROPERTY & ) <br> CASUALTY INSURANCE COMPANY, ) <br>   ) <br> Plaintiff, ) <br>   ) <br> v.   ) <br>   ) <br> PATRICK MONTGOMERY, ) <br> EMPLOYMENT TRADITIONS, INC.; ) <br> PEOPLE ESSENTIALS, INC.; E.T. 2, ) <br> INC.; E.T. 4, INC.; E.T. 6, INC.; E.T. 10, ) <br> INC.; CFC I/ET, INC.; CFC II/ET, INC.; ) <br> MONTGOMERY, INC.; ACRISURE ) <br> BUSINESS OUTSOURCING SERVICES, ) <br> LLC; ACRISURE, LLC; and CAMPBELL ) <br> MANAGEMENT GROUP, INC., ) <br>   ) <br> Defendants. ) | Case No. CIV-11-864-C |

**DEFENDANTS ACRISURE BUSINESS OUTSOURCING SERVICES, LLC, ACRISURE, LLC, AND CAMPBELL MANAGEMENT GROUP, INC. RESPONSE TO PLAINTIFF'S APPLICATION TO EXTEND ALL DEADLINES**

COMES NOW, Acrisure Business Outsourcing Services, LLC, Acrisure, LLC and Campbell Management Group, Inc. ("Defendants") and object to State of Oklahoma, ex rel. John Doak, Insurance Commissioner, as Receiver for Park Avenue Property & Casualty Insurance Company and Liquidation ("Plaintiff") Application to Extend All Deadlines ("Application") for the reasons set forth herein.

**INTRODUCTION**

The Plaintiff has failed to respond to Interrogatories and Request for Production of Documents propounded on November 18, 2011, failed to file an Expert List on January 3, 2012, with accompanying reports as required by this Court's Scheduling Order and failed to file a Witness List on February 15, 2012 ("Doc. No 20"). While the Plaintiff and its counsel readily

admit to failing to respond to Acrisure Business Outsourcing Services, LLC ("ABOS") discovery requests, the Application does not provide a date for when responses can be expected.  Rather, they impugn counsel for the Defendants in an effort to deflect their failure to comply with this court's scheduling order and the Federal Rules of Civil Procedure. In fact, the Plaintiff does not explain why it has missed the deadlines that are already past or why it does not intend to ever properly respond to the ABOS discovery requests, a fact which counsel for the Defendants did not suspect until receiving an email from Greg Riley on February 1, 2012 that the Plaintiff would not readily produce the workers compensation claim files which form the basis of Plaintiff's damage claim.  In support of its objections to Plaintiffs Application to Extend all deadlines, Defendants state as follows:

1. On November 18, 2011, Defendant Acrisure Business Outsourcing Services, LLC served its First Set of Discovery Requests to Plaintiff which included interrogatories, requests for Admissions and request for Production of Documents on counsel for the Plaintiff.  Pursuant to the Federal Rules of Civil Procedure, Plaintiff's responses were due on or about December 21, 2011.  The Plaintiff's responses are more than sixty days late.

2. On January 3, 2012, the deadline for Plaintiff to file an Expert Witness List and produce its expert reports, Plaintiff produced, and still has produced, nothing

3. On January 11, 2012, Henry Hoss, counsel for Defendants Acrisure Business Outsourcing Services, LLC called Greg Riley, counsel for Plaintiff to discuss the status of the plaintiff's past due discovery responses.

4. On January 20, 2012, Henry Hoss followed up with an email stating:

> As we discussed last week, the Receiver's responses to ABOS's interrogatories and request for production of documents is over a month past due.  Review of these documents is critical to obtaining and preparing our experts for the trial of this matter.  It is my understanding that you expected to have the responses and documents available to us  this  week  for review.  However, we did not receive anything this week.

> It is critical that we receive this information so we can be prepared for trial. Please let me know as soon as possible as to when it will be available.

Exh. "1", January 20, 2012 email from Hoss to Reilly.

5.  Later that day, Mr. Riley responded indicating as follows:

> I apologize for the delay and I will have an update for you as soon as I hear back from the assistant receiver's office. Some of the document requests are quite voluminous so there is some difficulty in pulling everything together. What specific documents are you needing for your expert? Maybe I can help prioritize those specific requests or provide you with more information ahead of formal responses.

Exh. "2", January 20, 2012 email from Reilly to Hoss.

6.  Mr. Riley followed up with another email on January 24th indicating that the assistant receiver is still putting together responsive documents and is <u>finalizing</u> review to determine answers to the last few interrogatories:

> As I mentioned last week, we can help expedite your preparation of an expert if you help me prioritize your request. I apologize for the delay. Additionally, I had a death in the family. I will be traveling to Maryland, we need more time to prepare Plaintiff's discovery. Can we agree to extend deadlines by thirty days?

Exh. "3", January 24, 2012   email from Reilly to Hoss.

7.  Henry Hoss responded by indicating that he was available to discuss an extension on Thursday or Friday to discuss how to move forward promptly and stated it probably can wait until Monday if that helps with Mr. Reilly's schedule. Henry Hoss asked Mr. Reilly to advise what works for him. Mr. Reilly responded, "let's discuss Monday afternoon". Exh 4, January 25, 2012 email to Reilly from Hoss and responding email to Hoss from Reilly. Mr. Riley did not call on the following Monday. In fact, the next communication was an email from Henry Hoss dated February 1, 2012 accepting Mr. Riley's offer to assist with the prioritizing of the responses to ABOS' outstanding discovery requests suggesting a telephone conference between the claims

- 3 -

review experts, Andrew Stuehrk and Bill Barbagallo and someone from the assistant receiver's office. It also notes that the purpose of the call will be to focus on and understanding the information and the UDS report and how to facilitate a review of the files which are the subject of the lawsuit in the receiver's demand. Mr. Riley responded later that day indicating he was not willing to arrange a telephone conference as suggested. Furthermore, for the first time Mr. Riley reveals that his client has no intention of producing the underlying claims files which are at the heart of the receiver's damage claim. If any actions by counsel were "untoward," it was Mr. Riley in making a false representation on January 24 that he was "finalizing review to determine answers to the last few interrogatories" when clearly that wasn't true as evidenced by the fact that no such responses have been provided and offering to streamline discovery while he and his client never had any intention of producing the claims files which form the basis of the majority of the plaintiff's purported damages. Exh. "5", February 1, 2012 email from Reilly to Hoss.

8. **The importance of the claims files and the other documents request by ABOS**. Plaintiff has three categories of damages. First, claims paid by Park Avenue and Imperial while ETI carried its high deductable workers' compensation insurance with Park Avenue and Imperial. Second, claims paid by Park Avenue and Imperial (or paid on their behalf by the receivership or state guarantee funds) since termination of those policies, December 31, 2008. Third, reserves on those still existing claims as determine by claims adjusters. It is believed that the reserves sought by the Plaintiff are in excess of $5,000,000.00. The reserves represent a claims adjuster's estimate of what might be paid out to a workers' compensation claimant over the life of the file. The Plaintiff does not want the Defendants to have access to these claims files to determine whether the reserves have any basis. The Plaintiff is also seeking amounts allegedly owed by Employment Traditions Inc and its affiliated companies prior to the

Receiver being appointed. In this case and the companion case, the Plaintiff as receiver steps into the shoes of Park Avenue Property & Casualty Company ("Park") and Imperial Casualty Company ("Imperial"), both of which were owned at some point by the Lancaster's. On March 18, 2010 the Insurance Commissioner filed its application for receivership and injunctive relief requesting a show cause hearing why Imperial should not be placed in receivership.  The basis for the Commissioner's application included several grounds.  The Commissioner has stated in pleadings that "none of Imperial's principles are fit to be involved in the business of insurance." "Imperial is owned and managed by scam artists who used the company to steal money from its policyholders and others.  Fraud is the norm- the ordinary course of business."  In addition to the Lancaster's involvement with Park, the Commissioner alleged that Derrick Lancaster and Jerry Lancaster engaged in "brazen self dealing" by setting up a company known as General Insurance Managers, Inc. ("GIM").  GIM entered into a management service agreement with imperial providing for GIM to provide medical review services to Imperial on claims Imperial was adjusting.  Medical review services were actually performed by an unaffiliated company named Coventry Workers' Comp. Services.  GIM, however, was paid a fee by Imperial for medical cost savings, despite the fact that GIM did none of the work.  According to the Commissioner, from February to July 2009, alone, Derrick Lancaster skimmed $1,036,655.94 from Imperial "under the guise of this bogus service agreement."  Since inception, Derrick Lancaster has been paid $8,617,175.31 for GIM services.  At the time, the Commissioner filed its application for a show cause hearing on March 18, 2010, the Commissioner claimed Derrick Lancaster was still skimming money out of Imperial under the scheme.  In light of the Oklahoma Insurance Commissioner's own allegations regarding the financial activities of Park and Imperial, it is should come as no shock to the Plaintiff that the defendants would expect a thorough review of

those companies books and records including the workers compensation files. Exh "6", *State of Oklahoma, ex rel. Kim Holland's response to Imperial Casualty and Indemnity Company's Application to Dissolve, Vacate or Modify Order*, CJ-2010-2340, District Court of Oklahoma County.

9. In response to Mr. Riley's indication that his client had no real intention of cooperating in discovery, Hoss sent the following e-mail requesting deposition dates and a date for the discovery responses:

> I am disappointed in your response to our offer to allow our experts to talk with someone from the Receiver's office to streamline the past due discovery responses. Please provide me with a date when you anticipate the discovery responses will be completed.
>
> With respect to the Workers' Comp files, while these may be currently adjusted by the various guaranty funds, the claims are being administered by the Receiver. As a result, the Receiver does have control over these files. Furthermore, I believe the claims are the basis of all or part of your client's claim against my clients. As a result, the files either need to be available or any claim relating to these files needs to be removed from the lawsuit.
>
> We would ask that the Receiver request all of the open files to be deposited in one location so our experts can review these as expeditiously as possible. Please let me know where you propose to assemble the open claims' files and when we can expect them available for review.
>
> Also, please provide me with available dates for a deposition of someone most knowledgeable about the UDS and loss run data.

Exh. "7", February 3, 2012 email from Hoss to Reilly.

10. When Mr. Reilly failed to respond to the request for deposition dates, Henry Hoss noticed the Receiver for a deposition and sent the following email:

> I never received a response to my request for deposition dates, so attached is a 30(b)(6) Notice of Deposition of a representative of the Receiver regarding the issues listed on Exhibit A to the Notice. While I am always reluctant to issue Deposition Notices, this is the last day to issue such a notice.

When can I expect responses to the outstanding discovery? The Receiver's responses are almost 60 days past due. This failure to provide discovery responses has prevented some of my clients' expert witnesses from becoming fully prepared and able to write their reports.

The claims adjusting experts which I had offered to let talk with the Receiver about how to streamline the responses audit guarantee funds' workers compensation files all the time. In order to expedite this all the Receiver needs to do is provide written permission for them to do so. Below is a form of a letter they have used in the past to gain access to the necessary files.

*The State of Oklahoma is involved in an indemnification action involving the Imperial Casualty Insurance Company and Park Avenue Insurance Company Receiverships. Although this action does not involve the Guaranty Associations, the valuations of liabilities are partially based on the UDS records received from Guaranty Associations. To effectively evaluate the remaining liabilities, the Special Deputy Receiver ("SDR") has agreed to allow Barbagallo & Stuehrk, LLC to conduct the audit on behalf of the opposing party Acrisure. It is desired for the audit to be completed the weeks of either March 5, 2012 or March 12, 2012. One or two members of that firm will need to visit your offices to complete the audit. Please provide me with dates that will be convenient for your staff members. We anticipate the audit to be completed in three days.*

*The audit shall consist of review of the entire claim file including any file handled by a Third party Administrator. This includes running notes, financial transactions, medical and rehabilitation reports, investigative correspondence, and all legal correspondence on the individual files including court decisions. If the files are electronic, access to imaged documents and Guaranty Fund systems pursuant to appropriate security protocol will be required.*

*Additionally, in separate correspondence we will be providing you with a listing of claim files that the audit team would like to review to verify proper claims handling and reserving. The field audit emphasis is on open claim reserves. Some of these claims may have been previously returned to the SDR and will be reviewed prior to our audit. In addition to the file listing that will be provided, the SDR audit team would like to review any claims that have an over the cap component. Please provide a list of any claims that may exceed your statutory cap.*

*Please contact me at your earliest convenience to confirm the dates for this audit and the appropriate staff to contact regarding the records to be reviewed. Thank you for your assistance in this matter.*

Exh "8", February 10, 2012 email to Reilly, Wilkes and Mathis from Hoss.

11. As noted previously, Mr. Riley did not call on Monday, January 30. Rather, Mr. Riley waited to call until February 13th, **after** his client had been issued a Notice for Deposition. Amazingly, Mr. Riley still would not commit to a date for responding to the outstanding discovery requests. Mr. Riley's focus was on arguing why his client didn't have to make the workers claim files available for inspection. In light of his failure to even acknowledge that responding mattered, Hoss indicated that his clients were not interested in a blanket extension of the deadlines.

12. On February 15, 2012, Plaintiff's counsel filed this motion. This was also the same date that Plaintiff's witness list was due. What is not addressed in the motion is why Plaintiff has not taken any discovery, responded to discovery, filed an expert witness list and reports, or filed its witness list. Plaintiff's failure to do so is not the result of anything Defendant or its counsel has done. In fact, Plaintiff's failure to advance this matter in any way is all the more amazing in light of its response to the Motion to Dismiss filed by Campbell Management Group and Acrisure, LLC. The Court will recall that those defendants filed a motion on the fraudulent transfer count and the successor liability count because they were not the purchasers of some of the ETI accounts. Plaintiff's responded that they could not be sure of that and needed discovery to determine the true facts (even though they have a copy of the transaction documents). Amazingly, however, Plaintiff has not engaged in any discovery.

13. It is worth noting that the filing and pendency of the Motion to Dismiss was not any reason for delay. Campbell Management Group, Acrisure, and ABOS readily conceded in that motion that ABOS was in fact the entity that purchased certain accounts of ETI. If there are legitimate claims for successor liability or fraudulent transfer – which there are not – then ABOS

9561242_1.DOC

stood and stands ready to defend those claims.  In fact, the Motion to Dismiss was a reason to get moving on discovery, as the need for discovery was Plaintiff's main defense to that motion. Instead of doing so, Plaintiff has done nothing.

Wherefore, the Plaintiff has failed to cooperate in discovery or comply with the Court's scheduling Order and the actions of his counsel indicate it does not intend to comply, therefore the Defendants request that Plaintiff's application be denied and the Defendants be granted all relief to which they show themselves to be entitled.

Dated this 22nd day of February, 2012.

*s/Henry D. Hoss*
Henry D. Hoss, OBA No. 11354
Amy D. White, OBA No. 19255
McAfee & Taft
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone:    (405) 235-9621
Facsimile:    (405) 235-0439
henry.hoss@mcafeetaft.com
amy.white@mcafeetaft.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22nd, 2012 a true and correct copy of the attached document was served by Electronic Mail and U.S. Mail upon the following counsel of record:

Gregory P. Reilly
Keith A. Wilkes
Newton O'Connor Turner & Ketchum
15 West Sixth Street, Suite 2700
Tulsa, Oklahoma 74119-5423
greilly@newtonoconnor.com
kwilkes@newtonoconnor.com


Rachel C. Mathis
Hall, Estill, Harwick, Gable
  Golden & Nelson, P.C.
320 South Boston Avenue
  Suite 200
Tulsa, Oklahoma 74103-3706
rmathis@hallestill.com


                                                          *s/Henry D. Hoss*
                                                          Henry D. Hoss