IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STATE OF OKLAHOMA, ex rel. | ) | |
| JOHN DOAK, INSURANCE | ) | |
| COMMISSIONER, AS RECEIVER | ) | |
| FOR PARK AVENUE PROPERTY & | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. CIV-11-864-C |
| | ) | |
| PATRICK MONTGOMERY, | ) | |
| EMPLOYMENT TRADITIONS, INC.; | ) | |
| PEOPLE ESSENTIALS, INC.; E.T. 2, | ) | |
| INC.; E.T. 4, INC.; ET 6, INC.; E.T. 10, | ) | |
| INC.; CFC I/ET, INC.; CFC II/ET, INC.; | ) | |
| MONTGOMERY, INC; ACRISURE | ) | |
| BUSINESS OUTSOURCING SERVICES, | ) | |
| LLC; ACRISURE, LLC; and CAMPBELL | ) | |
| MANAGEMENT GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS ACRISURE BUSINESS OUTSOURCING SERVICES, LLC'S, ACRISURE, LLC'S AND CAMPBELL MANAGEMENT GROUP, INC.'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

---

Henry D. Hoss, OBA #11354
Amy D. White, OBA #19255
McAFEE & TAFT A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK  73102-7103
PHONE:      (405) 235-9621
FAX:            (405) 235-0439

**ATTORNEYS FOR ACRISURE BUSINESS OUTSOURCING SERVICES, LLC, ACRISURE, LLC AND CAMPBELL MANAGEMENT GROUP, INC.**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**MOTION** ................................................................................................. 1

**BRIEF IN SUPPORT** ............................................................................ 1

**STATEMENT OF THE CASE** ............................................................. 1

**STATEMENT OF UNDISPUTED MATERIAL FACTS** .................. 4

**LEGAL ARGUMENT AND AUTHORITIES** .................................. 6

  **I. PLAINTIFF'S SUCCESSOR LIABILITY CLAIM FAILS.** .............................. 7

    **A. Michigan Law Applies To Plaintiff's Successor Liability Claim.** ..................... 7

    **B. Plaintiff's Claim For Successor Liability Against ABOS Fails.** ......................... 9

    **C. Plaintiff's Successor Liability Claim Against Campbell and Acrisure Fails.** ................................................................. 15

  **II. PLAINTIFF'S FRAUDULENT TRANSFER CLAIM FAILS AS A MATTER OF LAW.** ................................................. 16

    **A. The Uniform Fraudulent Transfer Act Governs.** ............................................ 16

    **B. Plaintiff's Fraudulent Transfer Claims Fail.** ................................................... 16

    **C. Plaintiff Cannot Prove The ABOS Transaction Was A Fraudulent Transfer.** ................................................................ 17

    **D. Plaintiff's Fraudulent Transfer Claim Against Acrisure and Campbell Also Fail Because Acrisure and Campbell Did Not Receive Any Assets From ETI.** .............................................. 18

**CONCLUSION** ..................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................ 6

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887 (10th Cir. 1991) ......................... 6

*Beard v. Viene,* 826 P.2d 990 (Okla. 1992) .......................................... 8

*Canal Ins. Co. v. Montello, Inc.,* No. 10-CV-411-JHP-TLW, 2011 WL 4608287 (N.D. Okla. Sept. 30, 2011) ................................................................ 7, 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................... 6

*City Mgmt. Corp. v. United States Chem. Co., Inc.*, 43 F.3d 244 (6th Cir. 1994) ............ 13

*Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938) ..................................................... 7

*First Nat'l City Bank vs. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611 (1983) ...................................................................................... 9

*Foster v. Cone-Blanchard Mach. Co.,* 597 N.W.2d 506 (Mich. 1999) ................... 7, 10, 12

*John T. Callahan & Sons, Inc. v. Dykeman Elec. Co.,* 266 F. Supp. 2d 208 (D. Mass. 2003) ................................................................................ 9

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941) ............................... 7

*Lakeview Commons v. Empower Yourself, LLC*, 802 N.W.2d 712 (Mich. App. 2010) .................................................................................. 10, 14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ......................... 6

*Multi-Grinding, Inc. v. Richardson Sales & Consulting Servs., Inc.,* No. 245779, 2004 WL 1335813 (Mich. App. June 15, 2004) .......................................... 17

*Oliver v. Perry*, No. 296871, 2011 WL 2204128 (Mich. App. June 7, 2011) ................. 14

*Pulis v. United States Elec. Tool Co.,* 561 P.2d 68 (Okla. 1977) ...................................... 7

*RDM Holdings, Ltd. v. Cont'l Plastics Co.*, 762 N.W.2d 529 (Mich. App. 2008) ........... 14

*Starks v. Mich. Welding Specialists, Inc.*, 722 N.W.2d 888 (Mich. 2006) ........................ 14

*Stevens v. McLouth Steel Prods. Corp.,* 446 N.W.2d 95 (Mich. 1989) ........................... 10

*Thomas v. Int'l Bus. Machs.,* 48 F.3d 478 (10th Cir. 1995) ................................. 6

*Tomlinson v. Combined Underwriters Life Ins. Co.*, No. 08-CV-259-TCK-FHM,
2009 WL 2601940 (N.D. Okla. Aug. 21, 2009) ............................................... 8

*Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873 (Mich. 1976) ....................... 7, 11, 14, 15

*Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128 (10th Cir. 1991) .................... 7

*Zantel Mktg. Agency v. Whitesell Corp.*, 696 N.W.2d 735 (Mich. App. 2005),
*appeal denied*, 706 N.W.2d 29 (Mich. 2005) ................................................. 14

## Statutes

15 Okla. Stat. § 162 ........................................................................ 8

24 Okla. Stat. § 112 ........................................................................ 16

24 Okla. Stat. § 113 ........................................................................ 16

24 Okla. Stat. § 114 ........................................................................ 16

24 Okla. Stat. § 117(A) ..................................................................... 16

MCL 566.31 ................................................................................. 16

MCL 566.32 ................................................................................. 16

MCL 566.35(1) .............................................................................. 16

## Other Authorities

Restatement (Second) Conflict of Laws, § 145 (1971) ........................................ 8

Restatement (Second) Conflict of Laws, § 302 (1971) ........................................ 9

## Rules

Fed. R. Civ. P. 56........................................................................... 1, 6

## MOTION

Pursuant to Fed. R. Civ. P. 56 and LCvR 56.1, Defendants Acrisure Business Outsourcing Services, LLC ("ABOS"), Acrisure, LLC ("Acrisure") and Campbell Management Group, Inc. ("Campbell") (collectively "Defendants") move this Court for summary judgment.  As shown by the following brief and attached evidentiary materials, there are no genuine issues of material fact precluding judgment as a matter of law in Defendants' favor.

## BRIEF IN SUPPORT

## STATEMENT OF THE CASE

Between 2005 and 2008, Park Avenue Property & Casualty Insurance Company ("Park")[1] entered into four contracts with Employment Traditions, Inc. ("ETI")[2] under which Park allegedly provided high deductible workers' compensation insurance coverage to ETI, a professional employer organization ("PEO").  On December 31, 2008, ABOS entered into an Asset Purchase Agreement with ETI and others.[3]  (Ex. 1, 12/31/08 Asset Purchase Agreement.)  As part of the Asset Purchase Agreement, ABOS agreed to purchase certain accounts of ETI for Four Million Five Hundred Thousand Dollars

_____

[1] Park is in liquidation proceedings and, consistent with Oklahoma law, is being administered by John Doak, the Insurance Commissioner for the State of Oklahoma ("Plaintiff").  *See* Complaint ¶1 [Doc. No. 1-1].

[2] Defendants' reference to "ETI" throughout this Motion and supporting Brief, includes the ETI Affiliates, as defined in Plaintiff's Complaint in ¶12 [Doc. No. 1-1].

[3] Acrisure entered into the Asset Purchase Agreement for the limited purpose of providing a Guaranty.  (Ex. 1, Asset Purchase Agreement.)

($4,500,000).  (Ex. 1, 12/31/08 Asset Purchase Agreement, at pp. 1, 3, ¶¶ 1.1, 2.1.)

ABOS did not purchase any of ETI's other assets, and only purchased 126 accounts from

ETI.  (Ex. 1, Asset Purchase Agreement, at p. 1, ¶ 1.1; Ex. 2, Schedule of Purchased

Assets.)  Those accounts represented 51.6% of ETI's total business.  (Ex. 3, Affidavit of

Christopher Diepenhorst, pg. 4, ¶14.)

   With regard to ETI's liabilities, the Asset Purchase Agreement specifically

provides that:

> EXCEPT FOR THE ASSUMED LIABILITIES, IF ANY,
> BUYER IS NOT ASSUMING AND SHALL NOT BE
> LIABLE FOR ANY OBLIGATIONS OR LIABILITIES OF,
> OR LITIGATION OR CLAIMS AGAINST, ANY SELLER,
> SHAREHOLDER OR THE PURCHASED ASSETS OF
> ANY NATURE, WHATSOEVER ... All of the Excluded
> Liabilities shall remain the sole and exclusive responsibility
> of Sellers.

(Ex. 1, Asset Purchase Agreement, at pp. 2-3, ¶ 1.4(b))  (Emphasis in original.)  The

"assumed liabilities" are set forth in Paragraph 1.4(a) of the Asset Purchase Agreement

and are limited to obligations on assumed customer contracts and in that instance, only

liabilities arising out of or relative to obligations arising after the closing, which are

inapplicable in this case.  (Ex. 1, Asset Purchase Agreement, at p. 2, ¶ 1.4(a); Ex. 3,

Affidavit of Christopher Diepenhorst, pg. 2, ¶6.)

   Plaintiff claims that ETI breached the Park contracts by failing to pay all amounts

owed to Park under the contracts for years 2005-2008.  *See* Complaint, Counts I – IV

[Doc. No. 1-1].  Plaintiff seeks to recover monies from ETI for premium shortfalls,

expenses associated with claims and coverage, and other amounts, if any, owed under

2

agreements between Park and ETI.  Despite the fact that: (1) ABOS did not purchase all or substantially all of ETI's assets; (2) ABOS did not expressly or implicitly assume the liabilities that are at issue in this lawsuit; (3) ABOS paid the reasonably equivalent value for the purchased ETI accounts; and (4) ETI was not insolvent, Plaintiff named ABOS, Acrisure, and Campbell as defendants to this lawsuit.

Park admittedly does not have any direct relationship – contractual or otherwise – with ABOS, Acrisure or Campbell.  However, Plaintiff claims that ABOS, Acrisure and/or Campbell are liable to Park for ETI's alleged breaches under theories of successor liability and constructive fraudulent transfer due to the Asset Purchase Agreement.  *See* Complaint, Counts VI and VII [Doc. No. 1-1].

However, as set forth below, Plaintiff's claims against ABOS, Acrisure, and Campbell fail as a matter of law because:  (1) ABOS  purchased ***some*** of ETI's assets, not all of the assets; ABOS did not assume the liabilities that are at issue in this lawsuit; ABOS paid the reasonably equivalent value for the purchased assets; ETI was not insolvent; ABOS' officers were different than ETI's officers; ABOS did not purchase any equipment, computers, office furniture or maintain the office space which ETI had been located in prior to the date of the Asset Purchase Agreement; ETI continued to own the accounts that it did not sell to ABOS; (2) Campbell did not purchase ***any*** of ETI's assets; and (3) Acrisure did not purchase ***any*** of ETI's assets.  Therefore, Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On December 31, 2008, ABOS entered into an Asset Purchase Agreement with ETI and others.  (Ex. 1, 12/31/08 Asset Purchase Agreement.)

2.      Acrisure was a party to the Asset Purchase Agreement for the limited purpose of providing a Guaranty.  (Ex. 1, Asset Purchase Agreement.)

3.      As part of the Asset Purchase Agreement, ABOS agreed to purchase certain accounts from ETI for Four Million Five Hundred Thousand Dollars ($4,500,000).  All of the purchase price has been paid.  None of the purchase price was paid in stock or by giving an ownership interest in ABOS.  (Ex. 1, 12/31/08 Asset Purchase Agreement, at pp. 1, 3, ¶¶ 1.1, 2.1; Ex. 3, Affidavit of Christopher Diepenhorst, pg. 1 ¶2).

4.      ABOS did not purchase all of ETI's accounts, but instead, only purchased 126 accounts from ETI, which represented 51.6% of ETI's business.  (Ex. 3, Affidavit of Christopher Diepenhorst, pgs. 2 and 4, ¶¶8, 13; Ex. 2, Schedule of Purchased Assets.)

5.      Campbell did not purchase any of the ETI accounts or any ETI assets.  (Ex. 3, Affidavit of Christopher Diepenhorst, pg. 1, ¶4.)

6.      The Asset Purchase Agreement specifically provides that: "EXCEPT FOR THE ASSUMED LIABILITIES, IF ANY, BUYER IS NOT ASSUMING AND SHALL NOT BE LIABLE FOR ANY OBLIGATIONS OR LIABILITIES OF, OR LITIGATION OR CLAIMS AGAINST, ANY SELLER, SHAREHOLDER OR THE PURCHASED ASSETS OF ANY NATURE, WHATSOEVER ... All of the Excluded Liabilities shall remain the sole and exclusive responsibility of Sellers."   (Ex. 1, Asset Purchase Agreement, at pp. 2-3, ¶ 1.4(b))  (Emphasis in original.)

7.      These "assumed liabilities" are set forth in Paragraph 1.4(a) of the Asset Purchase Agreement, which are inapplicable in this case.   (Ex. 1, Asset Purchase Agreement, at p. 2, ¶ 1.4(a); Ex. 3, Affidavit of Christopher Diepenhorst, pg. 2, ¶6.)

8.      ABOS's officers were different than ETI's officers.   (Ex. 3, Affidavit of Christopher Diepenhorst, pg. 3, ¶¶9, 10 and 11.)

9.      ABOS and ETI do not, and did not, have the same ownership.   (Ex. 3, Affidavit of Christopher Diepenhorst, pg. 3, ¶¶9, 10 and 11.)

10.      ABOS did not purchase any equipment, computers, office furniture or maintain the office space which ETI had been located in prior to the date of the Asset Purchase Agreement.   (Ex. 3, Affidavit of Christopher Diepenhorst, pg. 3, ¶11.)

11.      ETI continued to own the accounts that it did not sell to ABOS.   (Ex. 3, Affidavit of Christopher Diepenhorst, pg. 4, ¶13.)

12.      The price paid by ABOS for the ETI assets was above fair market value and more than what the ETI assets were worth at the time of the transaction.   Accordingly, ABOS gave reasonably equivalent value for the assets of ETI.   (Ex. 4, Affidavit of Wanda J. Silva, pg. 3-4, ¶¶10, 11 and 13.)

13.       ETI retained 48.4% of its business, and continued in business for the two and a half years prior to the filing of the above-caption case. (Ex. 3, Affidavit of Christopher Diepenhorst, pg. 4, ¶13.)

15.      All of the customer accounts ABOS purchased signed new customer agreements with ABOS within a week or two after ABOS purchased the accounts from ETI. (Ex. 3, Affidavit of Christopher Diepenhorst, pg. 3-4, ¶12.)

5

## LEGAL ARGUMENT AND AUTHORITIES

### Preliminary Statement Regarding Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show "that there is no genuine dispute as to any material fact and [that the moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.

Defendant's burden as the moving party may be met by "pointing out to the district court that there is an absence of evidence to support [Plaintiff's] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to Plaintiff "to identify specific facts that show the existence of a genuine issue of material fact."  *Thomas v. Int'l Bus. Machs.,* 48 F.3d 478, 484 (10th Cir. 1995).  Plaintiff "must do [far] more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Plaintiff "must present sufficient evidence in specific, factual form for a jury to return a verdict" in its favor.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The moving party is entitled to summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita*, 475 U.S. at 587.  If the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-252 (1986).  In the instant case, Defendants are entitled to summary judgment because there are no issues of genuine fact precluding judgment in Defendants' favor as a matter of law.

## I.    PLAINTIFF'S SUCCESSOR LIABILITY CLAIM FAILS.

### A.  Michigan Law Applies To Plaintiff's Successor Liability Claim.

Choice of law analysis is only necessary if and when the laws of two states conflict. *Canal Ins. Co. v. Montello, Inc.,* No. 10-CV-411-JHP-TLW, 2011 WL 4608287 (N.D. Okla. Sept. 30, 2011).  When such a conflict exists, federal district courts sitting in diversity jurisdiction must follow the choice of law rules of the state in which they sit. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941).  Here, both Michigan and Oklahoma follow the well-established rule of successor liability that "where one company sells or otherwise transfers all of its assets to another company, the [purchaser] is not liable for the debts and liabilities of the [seller]." *See Pulis v. United States Elec. Tool Co.*, 561 P.2d 68, 69 (Okla. 1977) and *Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873, 878 n. 3 (Mich. 1976).

However, the states' exceptions to that general rule differ.  Oklahoma recognizes four exceptions: (1) express agreements to assume liabilities; (2) *de facto* mergers; (3) "mere continuation of the selling" entity; and (4) fraud in fact.  *See Pulis,* 561 P.2d 68; *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 n.4 (10th Cir. 1991). Michigan adds a fifth exception: "where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for," what could otherwise be construed as constructive fraud. *See Foster v. Cone-Blanchard Mach. Co.,* 597 N.W.2d 506, 509-10 (Mich. 1999). Accordingly, a conflict exists and choice of law is applicable, however, Oklahoma has

not articulated a choice of law rule with respect to successor liability claims.[4] Nevertheless, as discussed below, Michigan law should govern.

In tort actions, Oklahoma applies the Restatement's "most significant relationship" test which requires the Court to first determine the contacts between the case and parties with each jurisdiction involved and then decide, based upon those contacts, what jurisdiction has the most significant relationship. *See Beard v. Viene,* 826 P.2d 990 (Okla. 1992) and Restatement (Second) Conflict of Laws, § 145 (1971). For claims of contractual breach, Oklahoma applies the law of the state where the contract is performed. *See* 15 Okla. Stat. § 162. As for corporate law, Oklahoma has not yet adopted a choice of law rule, however, based upon the uniform adoption of the Restatement by the Oklahoma Supreme Court, the Restatement's "internal affairs doctrine" should apply.[5] Under that doctrine, the law of the state of incorporation governs actions that affect a corporation's creditors. *See* Restatement (Second) Conflict

---

[4] A conflict of law could further exist in the application of one of the four exceptions common to both states. *See Berg Chilling Sys., Inc. v. Hull Corp.,* 435 F.3d 455, 462-63 (3rd Cir. 2006) (finding that true conflict existed where plaintiff's claim under a *de facto* merger or consolidation theory was more likely to fail in one state than another).

[5] *See Canal Ins. Co. v. Montello, Inc.,* No. 10-CV-411-JHP-TLW, 2011 WL 4608287 (N.D. Okla. Sept. 30, 2011) and *Tomlinson v. Combined Underwriters Life Ins. Co.*, No. 08-CV-259-TCK-FHM, 2009 WL 2601940 (N.D. Okla. Aug. 21, 2009) (unpublished) (discussing Oklahoma's general adoption of the Restatement (Second) Conflict of laws holding the state Supreme Court would adopt the Restatement as to issues of piercing the corporate veil).

of Laws, § 302, cmt. a & e (1971); *see also First Nat'l City Bank vs. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 621-22 (1983) (citing the rule with approval).[6]

Here, Acrisure, ABOS, and Campbell are all incorporated in Michigan such that Michigan law would control under Restatement § 302.  (Ex. 3, Affidavit of Christopher Diepenhorst, pg. 3, ¶9.)  The transfer of assets from ETI to ABOS was effectuated by a contract that was negotiated, executed, and performed in Michigan; accordingly, under 15 Okla. Stat. § 162, Michigan law would govern Plaintiff's successor liability claims as they relate to contractual breach.  (Ex. 1, Asset Purchase Agreement; Ex. 3, Affidavit of Christopher Diepenhorst, pg. 2, ¶7)  Accordingly, the *only* contact between Oklahoma and the present case is the mere fact that Plaintiff is an Oklahoma governmental entity acting as a receiver for a corporation incorporated within the state. Weighed against the myriad of other Michigan-related contacts, Oklahoma law is clearly not the governing law.  Consequently, Michigan law should govern.

**B.  Plaintiff's Claim For Successor Liability Against ABOS Fails.**

Plaintiff attempts to impose successor liability upon ABOS by contending that: (1) Defendants "assumed the liabilities associated with the [a]ccounts that were purchased"; (2) the "purchase of substantially all the valuable assets of ETI and the ETI Affiliates amounted to a merger of ETI and the ETI Affiliates into Campbell, ABOS and/or Acrisure"; and (3) the "transaction was structured in such a way that Campbell, ABOS and/or Acrisure were, effectively, a mere continuation of the business of ETI and the ETI

---

[6] The minority choice of law rule applicable to corporate law looks to the substantive claim to determine what choice of law test applies. *See John T. Callahan & Sons, Inc. v. Dykeman Elec. Co.,* 266 F. Supp. 2d 208 (D. Mass. 2003).

Affiliates."  Complaint, ¶¶ 118-120 [Doc. No. 1-1].  However, as set forth below, the facts of the case do not support Plaintiff's position.

***The general rule under Michigan law is that a corporation that purchases the assets of another corporation does not, without more, assume the debts and liabilities of the selling corporation***.  *Stevens v. McLouth Steel Prods. Corp.,* 446 N.W.2d 95, 98 (Mich. 1989).  There are five exceptions to this general rule:

> "(1) where there is an express or implied assumption of liability;
>
> (2) where the transaction amounts to a consolidation or merger;
>
> (3) where the transaction was fraudulent;[7]
>
> (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; and
>
> (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation."

*Lakeview Commons v. Empower Yourself, LLC*, 802 N.W.2d 712, 715 (Mich. App. 2010) (citing *Foster v. Cone-Blanchard Machine Co.,* 597 N.W.2d 509-10 (Mich. 1999)).

Plaintiff cannot prove any of these exceptions.

### 1.    ABOS Did Not Assume The Subject Liabilities.

It is undisputed that the Asset Purchase Agreement provides that (1) "EXCEPT FOR THE ASSUMED LIABILITIES, <u>IF ANY</u>, BUYER IS NOT ASSUMING AND

---

[7] Plaintiff did not plead exceptions three (the transfer was fraudulent under successor liability theory) or four (where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for).  However, Plaintiff cannot prove these exceptions, either.

SHALL NOT BE LIABLE FOR ANY OBLIGATIONS OR LIABILITIES OF, OR LITIGATION OR CLAIMS AGAINST, ANY SELLER, SHAREHOLDER OR THE PURCHASED ASSETS OF ANY NATURE, WHATSOEVER ... All of the Excluded Liabilities shall remain the sole and exclusive responsibility of Sellers."  (UMF No. 6) and (2) these "assumed liabilities" are set forth in Paragraph 1.4(a) of the Asset Purchase Agreement, which are inapplicable in this case.  (UMF No. 7.)   Therefore Plaintiff's contention that ABOS assumed the subject liabilities fails as a matter of law.

  2. **ABOS' Purchase Of Some Of ETI's Assets Was Not A Merger.**

  To prove the existence of the second exception, a *de facto* merger, Plaintiff must demonstrate ***all*** four of the following

> (1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets and general business operations ….;

> (2) There is a continuity of shareholders which results from the Purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation;

> (3) The [seller] corporation ceases its ordinary business operations, liquidates and dissolves as soon as legally and practically possible; and

> (4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation.

*Turner,* 244 N.W.2d at 879.

In the present case, Plaintiff cannot prove *any* of the elements for a *de facto* merger.  Specifically, it is undisputed that (1) ABOS' officers were different from ETI's officers (UMF No. 8); (2) ABOS did not purchase any equipment, computers, office furniture or maintain the office space which ETI had been located in prior to the date of the Asset Purchase Agreement  (UMF No. 10); (3) ETI continued to own the accounts that it did not sell to ABOS (UMF No. 11) and, perhaps most tellingly; (4) ETI received cash, and not stock, so there was no continuity of shareholders.  (UMF No. 3.)  Therefore, Plaintiff's claim that ABOS' purchase of *some* of ETI's assets amounted to a *de facto* merger fails as a matter of law.

3.     **ABOS' Purchase Of Some Of ETI's Assets Was Not A "Mere Continuation" of ETI.**

In *Foster,* 597 N.W.2d at 510, the Michigan Supreme Court explained the fifth exception, otherwise known as the "mere continuation" doctrine:

> [A] continuity of enterprise between a successor and its predecessor may force a successor to "accept the liability with the benefits" of such continuity . . .  a prima facie case of continuity of enterprise exists where the plaintiff establishes the following facts: (1) there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) the predecessor corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (3) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation. . . [A]n additional principle relevant to determining successor liability, whether the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation.

597 N.W.2d 506 (citation omitted).  Plaintiff contends this exception applies because: (1) ABOS retained some of the ETI employees; (2) ETI's business ceased on the date of the ABOS transaction; and (3) ETI informed third parties that its name would change to ABOS.  Complaint, at ¶ 120 [Doc. No. 1-1].  Importantly, the undisputed material facts show a different picture.  While ABOS did hire 33 of 38 ETI employees, ABOS inserted its own officers. (UMF No. 8.)   Second, ETI retained 48.4% of its business, and continued in business for the two and a half years prior to the commencement of the above-caption matter. (UMF No. 13.)  Moreover, all of the customers ABOS "purchased" signed new customer agreements with ABOS within a week or two after ABOS purchased the accounts.  (UMF No. 15.)  Clearly ABOS did not hold itself out to the public as a mere name change.[8] Accordingly, Plaintiff's contention that ABOS' purchase of *some* of ETI's accounts was a "mere continuation" of ETI fails.

Moreover, fatal to Plaintiff's successor liability claim is that ABOS did not assume any liabilities or obligations of the seller ordinarily necessary for normal continuation of the business.   (UMF Nos. 6 and 7.)   Notably, Michigan law has traditionally applied the mere continuation factor only where one corporation sells its assets to another corporation with the same people owning both companies.  *See City Mgmt. Corp. v. United States Chem. Co., Inc.*, 43 F.3d 244 (6th Cir. 1994); *Zantel Mktg. Agency v. Whitesell Corp.*, 696 N.W.2d 735 (Mich. App. 2005), *appeal denied*, 706

---

[8] In fact, Plaintiff only alleges that ETI employees, prior to the transaction, told some customers there was going to be a name change.

N.W.2d 29 (Mich. 2005).  In this case, it is undisputed that ABOS and ETI do not, and did not, have the same ownership.  (UMF No. 9.)

Importantly, it appears all of the non-product liability cases which successfully impose a successor liability cause of action appear to occur in cases where the ownership between the buyer and seller are identical or substantially similar.  *See Lakeview*, 802 N.W.2d at 215-16; *RDM Holdings, Ltd. v. Cont'l Plastics Co.*, 762 N.W.2d 529, 552-53 (Mich. App. 2008); *see also Oliver v. Perry*, No. 296871, 2011 WL 2204128 (Mich. App. June 7, 2011).

In fact, there appears to be some question in Michigan if there is any successor liability law at all in non-product liability cases.  In *Starks v. Mich. Welding Specialists, Inc.*, 722 N.W.2d 888 (Mich. 2006),  the Michigan Supreme Court, affirmed the Court of Appeals' decision denying successor liability.  In doing so, it stated:

> [b]ecause an exception designed to protect injured victims of defective products rests upon policy reasons not applicable to a judgment creditor, the Court declines to expand the exception to the traditional rules set forth in *Turner* [244 N.W.2d 873] to cases in which the Plaintiff is a judgment creditor.

*Id.* at 889.  While the Michigan Court of Appeals has either ignored this decision or limited it to the instance of judgment creditors, *see Lakeview, RDM Holdings, and Oliver, supra,* the application of the exceptions to the general rule of non-liability in the non-product liability setting is already limited, if at all.

Therefore, ABOS is entitled to summary judgment on Plaintiff's successor liability claim.

### C. Plaintiff's Successor Liability Claim Against Campbell and Acrisure Fails.

As discussed above, to sustain a claim for successor liability, a plaintiff must prove that a defendant falls under one of four exceptions to "***the general rule that where one company sells or otherwise transfers all of its assets to another company, the latter is not liable for the debts and liabilities of the" transferring company***. *Turner*, 244 N.W.2d at 886 (emphasis added); *see also Lakeview Commons v. Empower Yourself*, 802 N.W.2d 712, 715 (2010).

Plaintiff contends that Campbell and Acrisure are liable under a successor liability theory because they assumed the liabilities that are at issue in this case and ABOS' purchase of *some* of ETI's assets was either a merger or merely a continuation of ETI's business. Once again, such a claim is premised upon a transfer of assets to the defendant company. However, in this case, it is undisputed that ETI did not transfer ***any*** assets to Campbell or Acrisure. (UMF Nos. 4 and 5.)[9]  Therefore, Plaintiff cannot sustain the claim for successor liability against Campbell and Acrisure and accordingly, these defendants are entitled to summary judgment.

---

[9] Plaintiff challenged the Defendants' Motion for Summary Judgment on the pleadings on the basis that it needed discovery to learn the true facts. Plaintiff, however, has failed to take any discovery or respond to any discovery since the case was removed to this Court in August.

II.     **PLAINTIFF'S FRAUDULENT TRANSFER CLAIM FAILS AS A MATTER OF LAW.**

      A.     **The Uniform Fraudulent Transfer Act Governs.**

Michigan and Oklahoma have adopted nearly identical versions of the Uniform Fraudulent Transfer Act ("UFTA").  *See* 24 Okla. Stat. § 112 *et seq.*; and MCL 566.31 *et seq.* Both states have also adopted identical versions of the fraudulent transfer provision that governs Plaintiff's UFTA claim.  *See* 24 Okla. Stat. § 117(A) and MCL 566.35(1).  Moreover, definitions of pertinent terms used throughout those provisions are also the same. *See* 24 Okla. Stat. §§ 113, 114; MCL 566.31, 566.32.  Therefore, even assuming a conflict exists, Plaintiff's fraudulent transfer claim fails regardless of which state's law applies.

      B.     **Plaintiff's Fraudulent Transfer Claims Fail.**

Plaintiff claims that ABOS' purchase of *some* of ETI's assets was fraudulent because they "were made to Campbell, ABOS, Acrisure and/or Montgomery without receiving reasonably equivalent value in exchange for the [assets] and while ETI and the ETI Affiliates were engaged in business with Park for which the remaining assets of the debtor were unreasonably small in relation to the business with Park."  Complaint, at ¶ 114 [Doc. No. 1-1].  Plaintiff's blanket allegation is not supported by the facts in this case.

A claim for constructive fraudulent transfer necessarily requires proof of an improper transfer of property to the defendant.  The standard for constructive fraudulent transfer as set forth in 24 Okla. Stat. § 117(A) and MCL 566.35(1) is:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation ***without receiving a reasonably equivalent value*** in exchange for the transfer or obligation ***and*** ***the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation***.

(Emphasis added.)   As discussed below, Plaintiff's fraudulent transfer claim fails as a matter of law as to all the Defendants.

### C.   Plaintiff Cannot Prove The ABOS Transaction Was A Fraudulent Transfer.

As previously stated, ABOS entered into the Asset Purchase Agreement for ***some*** of ETI's assets.  (UMF No. 3.)  ABOS did not purchase all of ETI's assets.  (UMF No. 4.)

Michigan and Oklahoma law are clear that a fraudulent transfer does not exist when reasonably equivalent value has been exchanged.  While neither state's adopted version of the UFTA defines "reasonably equivalent value;" the Michigan Court of Appeals discussed the term in *Multi-Grinding, Inc. v. Richardson Sales & Consulting Servs., Inc.,* No. 245779, 2004 WL 1335813 (Mich. App. June 15, 2004) (unreported) and stated that "all the facts and circumstances in making the "reasonably equivalent value" determination [should be considered], keeping in mind that any significant disparity between the value received and obligation assumed by the debtor-transferor will significantly harm innocent creditors." *Id.* at * 4 (citing *In re Tri-Star Techs. Co*., 260 B.R. 319, 325-26 (D. Mass. 2001)).

In the present case, it is undisputed that ABOS' purchase price of $4.5 million dollars was "reasonably equivalent value".  (UMF No. 12.)  Thus, Plaintiff's fraudulent transfer claim against ABOS fails as a matter of law.[10]

**D.    Plaintiff's Fraudulent Transfer Claim Against Acrisure and Campbell Also Fail Because Acrisure and Campbell Did Not Receive Any Assets From ETI.**

The critical document – the Asset Purchase Agreement – proves that neither Campbell nor Acrisure received any customer accounts nor any other assets from ETI and, as such, neither can be liable for constructive fraudulent transfer.  (Ex. 3, Affidavit of Christopher Diepenhorst, pgs. 1-2, ¶¶3, 4 and 5.)    Therefore, Plaintiff's claim for fraudulent transfer as to Campbell and Acrisure fails as a matter of law.

## CONCLUSION

The evidence attached to this Motion, together with the foregoing legal argument and authority, show that no substantial controversy exists as to any material fact concerning Plaintiff's claims against ABOS, Acrisure, and Campbell.    Accordingly, summary judgment should be entered in favor of ABOS, Acrisure and Campbell on all of Plaintiff's claims.

---

[10] Plaintiff must also prove that ETI was insolvent or that the transaction would make it insolvent.  This element, too, cannot be proven given the undisputed facts.  The financial information provided by ETI prior to its sale of accounts to Acrisure did not show insolvency or any liabilities to Park that could not have been paid with the purchase price or existing assets.  (Ex. 3, Affidavit of Christopher Diepenhorst, pg. 2, ¶8).

Respectfully submitted,

_s/Henry D. Hoss_ _____
Henry D. Hoss, OBA #11354
Amy D. White, OBA #19255
McAFEE & TAFT A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK  73102-7103
PHONE:      (405) 235-9621
FAX:          (405) 235-0439

**ATTORNEYS FOR ACRISURE BUSINESS
OUTSOURCING SERVICES, LLC,
ACRISURE, LLC AND CAMPBELL
MANAGEMENT GROUP, INC.**

## CERTIFICATE OF SERVICE

☑ I hereby certify that on March 1, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Gregory P. Reilly
Keith A. Wilkes
Rachel C. Mathis

_s/Henry D. Hoss_ _____
Henry D. Hoss

19